IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-116-BO

| | | |
|---|---|---|
| WILLIAM MAY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| THE REMEDY DINER, INC, | ) | |
|     Defendant. | ) | |

This matter is before the Court on defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. [DE 59]. The matter has been fully briefed and is ripe for ruling. For the reasons discussed below defendant's motion for summary judgment is granted.

## BACKGROUND

In August 2014, plaintiff began working for defendant, a North Carolina Corporation with its principal place of business in Raleigh, North Carolina. [DE 1-1, Complaint at ¶¶ 2-4, 9]. Plaintiff was employed as a kitchen worker for defendant, receiving $9.00 an hour. [DE 1-1, Complaint at ¶ 9].

After he was hired by defendant, plaintiff informed the management of the diner that he was epileptic. [DE 1-1, Complaint at ¶¶ 10-11; DE 27-2, May Aff. at ¶ 7; DE 25-4, Verif. and Decl. of the Remedy Diner, Inc. at ¶ 5]. According to plaintiff, this condition is a disability and has a significant effect on plaintiff's daily activities as he suffers from unexpected seizures. [DE 27-2, May Aff. at ¶¶ 4 & 5]. These seizures are generally short but do affect plaintiff's ability to work while they are occurring. [DE 27-2, May Aff. at ¶¶ 5 & 6]. Plaintiff states that he is able to recover quickly from these seizures and perform required work before and after these seizures.

[DE 27-2, May Aff. at ¶ 5]. Plaintiff states that he informed his managers that, due to his epilepsy, he may require additional breaks throughout a work shift or time off in order to seek medical treatment. [DE 27-2, May Aff. at ¶ 7].

When plaintiff suffered a seizure between Thanksgiving and Christmas in 2014, defendant allowed plaintiff to miss his scheduled work shift in order to recover. [DE 27-2, May Aff. at ¶ 9]. Plaintiff was able to return to work for his next scheduled shift without any consequences. [DE 27-2, May Aff. at ¶ 10].

On Friday, January 16, 2015, plaintiff suffered a seizure while working at the diner. Wake County EMS was summoned to address plaintiff's condition and took him to WakeMed Hospital. [DE 1-1, Complaint at ¶¶13-14]. This seizure caused plaintiff to fall forward, hit his head, and bite his lip. [DE 27-2, May Aff. at ¶ 11]. The following day, on January 17, 2015, plaintiff was discharged from the hospital with a note stating that he could return to work on Sunday, January 18, 2015 with no restrictions. [DE 25-1 at 12; DE 27-2, May Aff. at ¶ 13].

According to plaintiff, he contacted one of his managers, Mr. Jason Lloyd, after his seizure and inquired as to what he would need to do in order to return to work. [DE 27-2, May Aff. at ¶¶ 15, 16 & 17]. Mr. Lloyd informed plaintiff that he would need a doctor's note stating he was cleared to return to work. Plaintiff states that he was not informed he would need to find replacements for his shifts while he was in the hospital and not permitted to work by his doctor. [DE 27-2, May Aff. at ¶ 17]. According to the complaint, plaintiff attempted to return to work between January 20 and January 23. [DE 1-1, Complaint at ¶ 19]. The parties agree that, upon his attempted return, plaintiff was told by management that he had been terminated and a replacement for his position had already been hired. [DE 1-1, Complaint at ¶ 20].

2

According to defendant, plaintiff missed two weekend shifts after his seizure. Also according to defendant, Mr. Lloyd attempted to contact plaintiff multiple times, leaving voicemail messages and asking if plaintiff wished to continue his employment, but plaintiff did not answer or return Mr. Lloyd's phone calls. Mr. Scott Williams also attempted to contact plaintiff. Defendant then assumed plaintiff quit, and Mr. Lloyd filled the position. [DE 25-2, Def.'s Resp. to Pl.'s Interrog. No. 4]. Accordingly, defendants contend that plaintiff was terminated for repeated absenteeism during this time. [DE 25-2, Def.'s Resp. to Pl.'s Interrog. No. 4]. Defendant asserts that plaintiff was fired not for any discriminatory reason but for missing shifts he had been scheduled to work between January 20, 2015 and January 25, 2015 and plaintiff's failure to inform defendant of his intention to return to work after being cleared by his doctor. [DE 25-4, Verif. and Decl. of the Remedy Diner, Inc. at ¶¶ 4 & 6; DE 25-2, Def.'s Resp. to Pl.'s Interrog. No. 4 & 11].

Plaintiff asserts that, around the time of his termination, he returned to defendant's restaurant and spoke with one of defendant's kitchen managers. [DE 27-2, May Aff. at ¶ 27]. During this conversation, plaintiff expressed he was displeased with how his seizure and subsequent termination were being handled. [DE 27-2, May Aff. at ¶ 28]. Plaintiff also told the kitchen manager he was interested in receiving all necessary documents and information in order to file a claim for worker's compensation due to his injuries. [DE 27-2, May Aff. at ¶¶ 27 & 28]. According to plaintiff, the kitchen manager replied and asked plaintiff not to file the worker's compensation claim and informed him that defendant's management was afraid of being in any legal or worker's compensation proceedings regarding its employees. [DE 27-2, May Aff. at ¶ 29].

3

Plaintiff also contends that he returned to the restaurant sometime between January 27 to January 30, and that, during a conversation that happened between him and an owner, Ms. Angie Holder, Ms. Holder stated that "the real reason he was fired was because he was a liability to Remedy Diner on account of his medical condition." [DE 1-1, Complaint at ¶ 23–24; DE 27-2, May Aff. at ¶ 32]. Defendant denies this conversation. [DE 10, Answer at ¶¶ 23 & 24; DE 25-2, Def.'s Resp. to Pl's. Interrog. No. 15].

Plaintiff did not file a claim for workers' compensation insurance due to the injuries and expenses he sustained on January 16, 2015, and he did not file for unemployment insurance. [DE 1-1, Complaint at ¶ 19; DE 25-3, Pl.'s Resp. to Def.'s Interrog. No. 11]. Seven weeks later, on March 13, 2015, plaintiff was hired by Bella Empire, LLC at the same rate of $9.00. [DE 25-1 at 15; DE 27-2, May Aff. at ¶ 34]. Plaintiff stopped working with Bella Empire in May 2015. [DE 25-1 at 21; DE 27-2, May Aff. at ¶ 35].

On June 24, 2015, plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") under the Americans with Disabilities Act. On November 10, 2015, the EEOC found no evidence of discrimination and issued a "right to sue" letter. Plaintiff then filed suit February 5, 2016 in Wake County Superior Court, alleging: (1) Violation of the ADA; (2) Violation of Title VII of the Civil Rights Act of 1964; (3) Violation of the North Carolina Retaliatory Employment Discrimination Act; and (4) Wrongful Discharge. Defendant then timely removed the action to this Court on the basis of federal question jurisdiction.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations, however, will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Plaintiff first claims that he was discriminatorily discharged in violation of the American with Disabilities Act ("ADA"). Because plaintiff has not come forward with direct evidence of discrimination, he proceeds under the burden shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). This requires plaintiff to first establish a prima facie case, after which the burden shifts to defendant to proffer a legitimate, non-discriminatory basis for the adverse employment action. If defendant does so, the burden shifts back to plaintiff to establish that defendant's proffered basis is mere pretext for discrimination. *Id.* at 802.

A plaintiff makes a prima facie showing of wrongful discharge in violation of the ADA by establishing that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of discharge, he was performing his job at a level that met his employer's legitimate

5

expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001). Defendant does not dispute that plaintiff was within the ADA's protected class or that he was discharged, but disputes that plaintiff can establish a prima facie case on prongs (3) and (4).

As to prong (3), whether, at the time of discharge, plaintiff was performing his job at a level that met his employer's legitimate expectations, the Court finds that plaintiff has failed to establish a prima facie case meeting this prong. The undisputed facts show that plaintiff was discharged from the hospital the next day after his seizure and the doctor's note produced by plaintiff establishes that plaintiff could safely return to work on January 18, 2015, less than one day later. However, plaintiff admits that he did not return to work until at least several days later, between approximately January 20 and January 23. Defendant asserts that plaintiff did not return for over a week, with the plaintiff missing two weekend shifts, the second weekend being Friday, January 23 to Sunday, January 25. However, even the undisputed fact that plaintiff did not return to work until at least sometime between January 20 and 23 itself demonstrates that plaintiff was not meeting his employer's legitimate expectations that he work the shifts he was scheduled for. The evidence also demonstrates that plaintiff failed to secure adequate and proper replacements for these missed shifts. Plaintiff admitted this in his response to defendant's interrogatories, and it is evidenced by the necessity for defendant to hire a replacement the week after plaintiff's seizure when plaintiff failed to return. Defendant would have had no reason to hire a replacement if plaintiff's shifts had been covered.

Plaintiff argues that he has met prong (3) to show adequate job performance because he was given two raises and a consistent work schedule during the time he worked at the diner.

6

Plaintiff also argues that, because defendant has not produced any documentation detailing his allegedly deficient performance at work, and because plaintiff was not warned about deficient performance before being fired, that defendant cannot rebut his prima facie case as to prong (3). The Court does not agree, because it is undisputed that plaintiff missed several days of work without excuse and failed to make arrangements for his shifts to be covered. The evidence, therefore, shows that plaintiff was not performing his job at a level that met his employer's legitimate expectations.

The Court also finds that plaintiff has failed to meet his burden to meet prong (4) of the inquiry because he failed to establish a prima facie case that his termination transpired under circumstances that raise a reasonable inference of unlawful discrimination. Plaintiff admits that he disclosed that he had epilepsy shortly after his hire in August 2014 and that he continued to work for defendant even after that disclosure. Plaintiff has not alleged any discrimination based on his epilepsy prior to being terminated in January 2015, and "[t]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." *Runnebaum v. NationsBank of Maryland, NA*, 123 F.3d 156, 166–67 (4th Cir. 1997) (*quoting Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3rd Cir. 1996). Plaintiff also admits that defendant had allowed plaintiff time off to recover before because of his epilepsy and seizures, without consequences on any prior occasion. The only possible way, therefore, that plaintiff could meet prong (4) would be to show that the circumstances of his termination raise a reasonable inference of unlawful discrimination.

However, and as discussed above, the undisputed evidence shows that plaintiff did not return to work on January 18, as advised by his doctor, but tried to return only several days later,

7

without excuse and without seeking replacement for his shifts. There is also evidence in the record that plaintiff had a history of incompetent performance because on prior occasions he had caused flooding in the diner's kitchen and had torn a sink off the wall. Plaintiff's assertion that an owner of the diner had told him that he was fired for being a "liability" is not substantial evidence that raises an inference of discrimination in the face of the undisputed evidence which shows plaintiff's short employment at the diner, defendant's prior accommodations of plaintiff's condition without consequence, prior property damage cause by plaintiff, and plaintiff's unexcused absenteeism from work after January 18. The Court therefore finds that no rational trier of fact would conclude that plaintiff's termination transpired under circumstances which raised a reasonable inference of unlawful discrimination.

For these reasons—there being no dispute as to material facts on this claim, and because plaintiff has failed to establish a prima facie case under the ADA—defendant is entitled to summary judgment as to plaintiff's first claim.

Plaintiff next brought a claim under Title VII of the Civil Rights Act of 1964. Plaintiff concedes that summary judgment is merited as to this claim, and accordingly summary judgment will be entered in defendant's favor.

Plaintiff's third claim alleges a violation of North Carolina's Retaliatory Employment Discrimination Act ("REDA"). This statute provides that

> no person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to ... file a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action ... with respect to

any of the statutory provisions provided. N.C. Gen. Stat. § 95-221(a). Additionally,

> REDA requires that employees pursue or threaten to pursue a "claim or complaint, [or] initiate ... [an] action" outside any internal grievance systems that

their employer has developed. Complaining internally, such as an employee complaining to his supervisor or to human resources, does not suffice.

*Hadley v. Duke Energy Progress, Inc.*, No. 5:14-CV-229-D, 2016 WL 1071098, at *7 (E.D.N.C. Mar. 17, 2016), *aff'd sub nom. Hadley v. Duke Energy Progress, LLC*, No. 16-1861, 2017 WL 496091 (4th Cir. Feb. 7, 2017).

The Court finds that summary judgment is merited in defendant's favor as to this claim. The Court first notes that the undisputed facts show that plaintiff did not engage in any protected action under the statute for which he could have suffered retaliation. Plaintiff did not file a worker's compensation claim or engage in any protected action. Plaintiff can therefore only establish a claim under REDA if he shows that his discharge was in retaliation to a protected action he threatened to take. Plaintiff argues that he was improperly dismissed from his position as a result of a conversation he had with a kitchen manager in which he indicated that he would like to file a claim for worker's compensation. However, this evidence, even if true, fails to establish a claim under REDA. First, this conversation would be considered an internal complaint and not outside defendant's internal grievance systems, which is not enough to establish a claim under REDA. *See Hadley*, 2016 WL 1071098 at *7. Additionally, this type of speculative evidence alone is not sufficient to demonstrate a violation of REDA. "Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation." *Swain v. Elfland*, 550 S.E.2d 530, 534 (citation omitted). Finally, plaintiff admits that this conversation happened <u>after</u> he was already terminated.[1] Thus, plaintiff cannot

---

[1] As plaintiff stated in his response to defendant's motion for summary judgment:
    Around this time, Mr. May returned to Defendant's restaurant and spoke with one of Defendant's kitchen managers.... During this conversation, Mr. May expressed he was displeased with how his seizure and subsequent termination

9

demonstrate that his termination was in any way related to his desire to receive worker's compensation, and summary judgment in defendant's favor is merited.

Plaintiff's final claim is for wrongful discharge in violation of the public policy of North Carolina. Plaintiff does not contest that he was an at-will employee, or that under North Carolina law an at-will employee generally may not raise a wrongful termination claim. *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 79 (2010). There is a public policy exception to this general rule, however, where an employee's termination is contrary to public policy or prohibited by statute. *Kurtzman v. Applied Analytical Indus.*, 493 S.E.2d 420, 422 (1997). Plaintiff argues that, because his termination was in violation of the ADA and REDA, that it was therefore in violation of public policy and cognizable as a wrongful termination. However, and as discussed above, the undisputed evidence shows that plaintiff cannot establish a claim under either statute. Thus, summary judgment in defendant's favor is merited on this claim as well.

In sum, the undisputed evidence in this matter demonstrates that summary judgment in defendant's favor is merited for all of plaintiff's claims. Therefore, defendant's motion for summary judgment will be granted and this matter will be closed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE 59] is GRANTED. The Clerk is DIRECTED to close the case.

SO ORDERED, this 24 day of May, 2017.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

> were being handled... Mr. May also told the kitchen manager he was interested in receiving all necessary documents and information in order to file a claim for worker's compensation due to his injuries....

[DE 27 at 4].